UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| **Donald L. Hutcheson,**        ) | |
| ) | |
|     **Plaintiff,**        ) | |
| ) | |
| **v.**        ) | **3:06CV602AS** |
| ) | |
| **MICHAEL J. ASTRUE,**        ) | |
| **COMMISSIONER OF**        ) | |
| **SOCIAL SECURITY,**        ) | |
| ) | |
|     **Defendant.**        ) | |

**MEMORANDUM, ORDER & OPINION**

Plaintiff, Donald L. Hutcheson, ("Mr. Hutcheson") seeks judicial review of the denial of his claim for benefits and a period of disability under Title II of the Social Security Act. The Commissioner of Social Security found Mr. Hutcheson entitled to neither a period of disability nor Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 416 (I), 423.  This Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

Mr. Hutcheson applied for DIB on January 6, 2003, alleging an onset disability date of September 30, 2001  (Tr. 30-32, 43).  This claim was denied, and Mr. Hutcheson filed a request for  reconsideration on June 16, 2003, which was denied on September 8, 2003 (Tr. 4-29, 231-265).  Mr. Hutcheson then requested a hearing in front of Administrative Law Judge ("ALJ") Frederick McGrath, which was conducted on June 9, 2005 (Tr. 8-16).  After the ALJ denied Mr. Hutcheson's application, he requested review by the appeals council,

which was denied on August 4, 2006 (Tr. 4-7).

## I. Background

Statement of Facts

     Mr. Hutcheson is forty-four years old, and he has a high school education (Tr. 234-235). Prior to his alleged onset date, Mr. Hutcheson had worked as a machine operator (Tr. 237-238). Further, in documents submitted to the agency, Mr. Hutcheson stated that he was able to make his bed, cook for fifteen minutes, dust, do laundry, care for his bird, use a computer, and shop (Tr. 66-67).

Medical Evidence

     Mr. Hutcheson testified that he had a history of back pain but that his back was re-injured in 2001, after he lifted a heavy object (Tr. 244).

     Later that year, on June 26, 2001 Mr. Hutcheson saw Dr. Mark V. Reecer, M.D., who noted that Mr. Hutcheson had back tenderness, a reduced range of motion in his back, decreased sensation in his left calf, and an antalgic gait (Tr. 114). Additionally, Dr. Reecer noted that Mr. Hutcheson had no evidence of spasm or muscle atrophy, normal reflexes and a motor strength of 5/5. Id. After diagnosing acute lumbar strain and associated radicular pain, Dr. Reecer recommended that Mr. Hutcheson undergo physical therapy, take medication, and return to work, although he was restricted to light work. Id.

     On July 3, 2001, Mr. Hutcheson returned to Dr. Reecer for a follow-up visit during which Dr. Reecer noted residual tenderness and a minimal decrease in range of motion in Mr.

2

Hutcheson's back, negative straight leg raising, and no neurological deficiencies. Further, two weeks after the visit, Dr. Reecer released Mr. Hutcheson to regular work duties (Tr. 110).

On September 26, 2001, a few days before his alleged onset date, Mr. Hutcheson went to the hospital following a car accident and reported pain in his knee, left hip, low back, and left hand, however, diagnostic tests revealed no significant abnormalities (Tr. 118).

The same month, Mr. Hutcheson saw Dr. Jeffrey W. Miller, D.O., complaining of chronic diarrhea (Tr. 139-149). After performing a colonoscopy, which revealed a small polyp, Dr. Miller diagnosed Mr. Hutcheson with irritable bowel syndrome and prescribed medication. Id.

On January 21, 2003, Mr. Hutcheson visited psychiatrist Dr. Mohammed Sami, M.D., stating that he thought he could be hearing voices (Tr. 153). During the visit, Mr. Hutcheson denied having hallucinations in the past and stated that he had never before been treated for psychological problems. Id. Dr. Sami noted that Mr. Hutcheson was cooperative, talkative, and a little paranoid; his mood was depressed though his affect was appropriate and his memory was intact; and his judgement, insight, and ability to concentrate were fair (Tr. 154-155). Overall, Dr. Sami assigned Mr. Hutcheson a global assessment of functioning ("GAF") of 55 and after diagnosing depressive disorder, social phobia, and a learning disability, Dr. Sami prescribed medication (Tr. 155-156).

On February 27, 2003, at the request of the state agency, Mr. Hutcheson was

examined by Dr. Robert B. Fischer, Ph.D (Tr. 157-160).  During the visit Mr. Hutcheson complained of anger attacks, depression, and auditory hallucinations. Id.  Upon examination, Mr. Hutcheson was able to remember one of three words after five minutes and knew neither the month of the year nor the season (Tr. 158).  Also, Mr. Hutcheson obtained a full scale IQ score of seventy-five on the Wechsler Adult Intelligence Scale-III, and both a verbal IQ score of seventy-five, and a performance IQ score of seventy-nine on the same test. Id.  Finally, Dr. Fischer assigned a GAF of 68 and diagnosed Mr. Hutcheson with major depressive disorder rating mild to moderate, generalized anxiety disorder, borderline intellectual functioning, and personality disorder (Tr. 159).

On April 5, 2003, Mr. Hutcheson visited Dr. Noe J. Marandet, M.D., who noted that Mr. Hutcheson complained of the following: (1) panic attacks, (2) depression, (3) suicidal idealations, (4) chronic back pain radiating to his leg, which he had been told was a herniated disc, (5) gastroesophageal reflux disease, and (6) a learning disability (Tr. 161-162).  Dr. Marandet noted no significant clinical abnormalities, including a normal gait, no muscle spasm, negative straight leg raising, normal motor strength, no sensory deficits, normal reflexes, and no muscle atrophy (Tr. 163-164).

Subsequently, Mr. Hutcheson's record was reviewed by two state agency physicians and two state agency psychologists (Tr. 166-177).  The two physicians opined that Mr. Hutcheson could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand, walk, or sit about six hours in an eight hour workday, and engage in unlimited pushing

4

or pulling. Id. Further, the two psychologists concluded that Mr. Hutcheson could perform simple repetitive tasks on a sustained basis. Id.

In November 2003, Dr. Sami noted that Mr. Hutcheson's mood had improved, he slept better, was going out, and denied delusions and suicidal idealizations (Tr. 203).

On July 6, 2004, Mr, Hutcheson returned to Dr. Sami, who noted that Mr. Hutcheson was doing well and once again denied suicidal idealizations and hallucinations (Tr. 195). Accordingly, Dr. Sami discontinued Mr. Hutcheson's use of the anti-psychotic medication Risperdal. Id.

Yet despite his October 2004 notes indicating that Mr. Hutcheson was traveling to Florida and was dealing with his depression, by the beginning of 2005 Dr. Sami put Mr. Hutcheson on a prescription for Loxitane, a medication used to treat schizophrenia (Tr. 192, 230).

Hearing Testimony

On June 9, 2005 a hearing was held at which Mr. Hutcheson and Leonard Fisher, Ph.D., a vocational expert, testified.

Specifically, Mr. Hutcheson testified that he continued to suffer from lower back pain that he describes as "unbearable at times" and that his back pain caused problems with his legs and caused him to avoid physical activity (Tr. 244-245, 250). Further, Mr. Hutcheson stated that he was not comfortable with strangers in large groups, heard things that, "ain't really there," and suffered from paranoia, schizophrenia, anxiety attacks, and blurred vision

5

on a daily basis due to high blood sugar levels which range from 169 to 500, instead of the 75 and 125 range, in which Mr. Hutcheson testified his blood should fall (Tr. 246-247). Finally, Mr. Hutcheson described his daily activities, including taking care of his bird, watching television, and using his computer for a little while each day. However, Mr. Hutcheson also testified that he does not do home or yard maintenance and that his mother prepares most of his meals (Tr. 250).

Next, Mr. Fisher, the vocational expert testified that Mr. Hutcheson could perform unskilled light and sedentary jobs (Tr. 252, 261-263). First, Mr. Fisher stated that Mr. Hutcheson had previously performed both unskilled and semi-skilled past work, including his past work as a cement mixer (Tr. 256-258). Next, the ALJ posed a hypothetical to Mr. Fisher asking him to consider whether a person with Mr. Hutcheson's vocational profile and limitations could perform Mr. Hutcheson's past work as an acid mixer (Tr. 261). Mr. Fisher testified that Mr. Hutcheson could perform not only his past work as an acid mixer, but also unskilled light jobs such as a parking attendant or janitor, as well as unskilled sedentary jobs such as a document microfilm preparer, surveillance system monitor, film touch up inspector, bonder, and escort vehicle driver (Tr. 261-263).

ALJ's Decision

On March 15, 2006 the ALJ issued his finding that Mr. Hutcheson was able to perform simple, routine, repetitive light work (Tr. 8-16). Specifically, the ALJ stated that Mr. Hutcheson is able to perform activities of daily living, including cooking, household

6

chores, shopping for groceries, and laundry (Tr. 13). Further, the ALJ relied upon the vocational expert in finding that Mr. Hutcheson was limited to work that entailed no production-rate pace and only limited interpersonal interactions with co-workers, including his past work as a cement mixer or other light and sedentary jobs. Id. Accordingly, the ALJ found that Mr. Hutcheson was not disabled. Id.

Appeals Council Evidence

Following the issuance of the ALJ's decision, Mr. Hutcheson submitted additional evidence to the appeals council, consisting of medical evidence that transpired after the ALJ's hearing on June 9, 2005, but prior to the ALJ's March 15, 2006 decision (Tr. 204-230). First, Mr. Hutcheson submitted an M.R.I. performed in July, 2005 on his lower back that showed a bulging disc with minimal impingement (Tr. 211). Then, a month later on August 25, 2005, Dr. Isa S. Canavati, M.D., examined Mr. Hutcheson and reported no significant abnormalities, after reviewing Mr. Hutcheson's M.R.I. and recommending physical therapy and medication (Tr. 213-214). Additionally, Mr. Hutcheson submitted evidence of a nerve conduction study that was performed on his legs in September, 2005 showing mild radiocopathy (Tr. 215-216).

## II. Standard of Review

This court's review of the Commissioner's decision is a limited one. Unless there is an error of law, this court will uphold the Commissioner's findings of fact if they are supported by substantial evidence. Shoenfeld v. Apfel, 237 F.3d 788, 792 (7th Cir. 2001).

Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 399-400 (1971). In making a substantial evidence determination, this court will review the record as a whole, but will not reevaluate the facts, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. Williams v. Apfel, 179 F.3d 1066, 1071-72 (7th Cir. 1999). That being said, the ALJ must "build an accurate and logical bridge between the evidence and the result." Shramek v. Apfel, 226 F.3d 809, 811 (7th Cir. 2000).

With respect to credibility determinations, the ALJ is in the best position to observe the demeanor and veracity of the testifying witness. Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir, 2000). This court will not disturb the ALJ's weighing of credibility so long as those determinations are based on some support in the record and are not "patently wrong." Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006) (citing Carradine v. Barnhart, 360 F.3d 751, 753 (7th Cir. 2004). However, the district court is required to critically review the evidence and not simply rubber stamp the commissioner's decision. Clifford, 227 F.3d at 869.

### III. Discussion

Generally, "[b]enefits are available only to those individuals who can establish disability under the terms of the Social Security Act." Estok v. Apfel, 152 F.3d 636, 638 (7th.Cir.1998). Specifically, the claimant bears the burden of showing through testimony and medical evidence supported by clinical data and laboratory diagnosis that she was disabled

8

during the period in which she was insured. Reading v. Matthews, 542 F.2d 993, 997 (7th Cir.1976) *(citing,* Jeralds*,* 445 F.2d at 38-39). Furthermore, the claimant must show that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The regulations supporting the Social Security Act create a five-step inquiry in determining whether a claimant is disabled, under which the ALJ must consider the applicant's claim in the following sequence:

> (1) whether the claimant is currently employed; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one listed by the Secretary; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing any work in the national economy.

Dixon v. Massanari*,* 270 F.3d 1171, 1176 (7th Cir. 2001) (citing 20 C.F.R. § 404.1520*).* The initial burden in steps one through four is on the plaintiff; only at step five does the burden shift to the Commissioner. Bolinger v. Barnhart, 446 F. Supp. 2d 950, 955 (N.D.Ind., 2006)*.*

A. Credibility Determination

Mr. Hutcheson raises three arguments in response to the ALJ's decision. First, Mr. Hutcheson argues that the ALJ erred in determining that his testimony and discussion of his impairments was not wholly reliable.

Generally, credibility determinations by the ALJ are entitled to "special deference" and will only be overturned if the determination is patently wrong. Schenk, 357 F.3d at 703;

9

Powers, 207 F.3d at 435. Further, a discrepancy between the degree of pain claimed by a Social Security disability applicant and that suggested by medical records is probative of exaggeration. Sienkiewicz v. Barnhart, 409 F.3d 798 (7th Cir. 2005). However, pain can be severe and disabling even in the absence of medical evidence. Carradine, 360 F.3d at 753. Thus, once a claimant produces evidence of an underlying impairment, the commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. Id. at 753. Instead, the ALJ must go beyond objective medical evidence in the record and consider seven factors found in the social security regulations in making a credibility determination including the following:

> (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate the symptoms; (5) treatment other than medication the individual receives or has received for pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain and other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms

20 C.F.R. § 416.929(c).

In the present case, Mr. Hutcheson argues that because the ALJ disregarded his complaints of pain without looking at the seven regulatory factors, the ALJ erred in making his credibility determination. (Pl. Br. at 9-10).

However, as the government correctly points out, the ALJ covered all basis in making his credibility determination. (Def. Br. at 10-11). First, the ALJ relied upon the opinions of

10

the state agency consultants after noting that there were no medical opinions in the record that refuted the findings of the state agency physicians (Tr. 14). Second, the ALJ noted that the objective medical evidence in the record, including motor strength testing and straight leg testing, did not support Mr. Hutcheson's allegations of pain (Tr. 14, 111, 114, 118, 154-155, 163-164, 195). Finally, pursuant to the seven factors found in the social security regulations, the ALJ considered Mr. Hutcheson's daily activities and sporadic treatment in making his determination that Mr. Hutcheson's allegations of pain were not wholly credible (Tr. 13-14, 66-67, 114, 139, 156).

Accordingly, because the ALJ looked beyond objective medical evidence, there is no substantial evidence that the ALJ erred in making his credibility determination. *See* 20 C.F.R. § 416.929(c).

B. Evidence of Pain

Secondly, Mr. Hutcheson argues that the ALJ had no basis for disregarding evidence of pain radiating from Mr. Hutcheson's legs (Pl. Br. at 10-11). Although Mr. Hutcheson does not specifically point to any evidence, the record does contain evidence he submitted to the appeals council following the ALJ's decision, including a nerve condition study performed on Mr. Hutcheson's legs that rendered abnormal results (Tr. 215-216). Other than Mr. Hutcheson's testimony itself, which the ALJ did not consider wholly credible, this is the only evidence of pain radiating from Mr. Hutcheson's legs contained in the record. While Mr. Hutcheson complained of leg pain to Dr. Reecer prior to his alleged onset date, Dr.

11

Reecer noted no clinical abnormalities (Def. Br. at 14, 15, Tr. 111-113).  Additionally, Mr. Hutcheson complained of leg pain to Dr. Marandet on April 5, 2003; however, Dr. Marandet noted no significant abnormalities (Tr. 161, 165).  Thus, the only evidence contained in the record of Mr. Hutcheson's leg pain is the additional evidence he submitted to the appeals council following the ALJ's decision.

Generally, medical evidence submitted to the Appeals Council following the ALJ's decision cannot be considered part of the record for a substantial evidence review.  Rice v. Barnhart, 384 F.3d 363, 366 n.2 (7th Cir. 2004).  Instead, with regard to new medical evidence, a reviewing court may remand the case, ordering the additional evidence to be taken before the commissioner only when: (1) the evidence is new, (2) the evidence is material, and (3) there is good cause for the failure to incorporate such evidence. 42 U.S.C. § 405(g) (2006). See also Schmidt v. Barnhart, 395 F.3d 737, 742 (7th Cir 2005), Kapusta v. Sullivan, 900 F. 2d 94, 97 (7th Cir 1989).  Specifically, evidence is "new" if it was not in existence or available to the plaintiff prior to the administrative proceeding. Schmidt, 395 F.3d  at 742.

In the present case, the evidence Mr. Hutcheson submitted following the ALJ's decision was not new for the purposes of the new and material evidence standard.  From the time of the irregular nerve study, performed on September 25, 2005, to the issuance of the ALJ's decision on March 15, 2006, Mr. Hutcheson had nearly six months to submit evidence of the study to the ALJ.  Mr. Hutcheson has presented no evidence that the nerve condition

study performed on his legs was unavailable for him to submit to the ALJ prior to his decision. Accordingly, because evidence of the irregular nerve study was not properly before the ALJ, there is no significant evidence that the ALJ erred in ignoring this line of evidence.

C. Residual Functional Capacity

Finally, Mr. Hutcheson argues that the ALJ erred in establishing his residual functional capacity ("RFC") (Pl. Br. at 11). Here, the ALJ found Mr. Hutcheson's statements concerning his daily activities consistent with an RFC that would allow him to do his past relevant work as well as a significant number of other jobs (Tr. at 16). However, Mr. Hutcheson argues that the ALJ gave his daily activities only a cursory examination that does not reveal how little Mr. Hutcheson is able to do.

Generally, a claimant's RFC is determined by "all the relevant evidence in the case record" including medical and other evidence. 20 C.F.R. § 404.1545. Thus, although a claimants daily activities are a factor in determining RFC, such activities are not the only factor in the determination.

In the present case, the ALJ clearly considered all relevant evidence in the case record in determining Mr. Hutcheson's RFC. For example, the ALJ noted that in making his disability determination he considered Mr. Hutcheson's lack of consistent treatment, as well as the ALJ's assessment that Mr Hutcheson's conditions were controlled through conservative treatment, including medication and psychotherapy (Tr. 14, 114, 139, 156). Further, the ALJ specifically cited the documents detailing Mr. Hutcheson's daily activities

(Tr. 13, 66-67).

Mr. Hutcheson argues that the ALJ did not examine the documents detailing his daily activities, yet the ALJ did not state that Mr. Hutcheson could perform lawn work, do all household chores, or cook for others.  Instead, the ALJ stated that Mr. Hutcheson is able to perform activities of daily living, including cooking, household chores, shopping for groceries, and laundry (Tr. 13).  Indeed, this finding is consistent with Mr. Hutcheson's statements to the agency indicating that he was able to make his bed, cook for fifteen minutes, dust, do laundry, care for his bird, use a computer, and shop (Tr. 66-67).

Thus, because the ALJ properly considered Mr. Hutcheson's daily activities, alongside his conservative treatment and lack of consistent treatment, there is no substantial evidence that the ALJ erred in establishing Mr. Hutcheson's RFC. *See* 20 C.F.R. § 404.1545.

## IV. Conclusion

The purpose of this Court's review of the ALJ's decision is only to ensure that it is supported by substantial evidence.  Therefore, since the ALJ's decision was supported by substantial evidence, the decision of the Commissioner is **AFFIRMED**.

**SO ORDERED**.


**Date: July 19, 2007**                                               S/ ALLEN SHARP
                                                                **ALLEN SHARP, JUDGE**
                                                                **UNITED STATES DISTRICT COURT**